## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ZOSER-RA NETERKEHT,
      Plaintiff,

vs.

MICHELLE LONGWORTH, et al.,
      Defendants.

Case No. 1:12-cv-695
Dlott, J.
Litkovitz, M.J.

**ORDER AND REPORT AND
RECOMMENDATION**

Plaintiff Zoser-Ra Neterkeht, proceeding pro se, filed the original complaint in this action

on September 20, 2012. (Doc. 3). Plaintiff brings claims arising out of his arrest and criminal

prosecution for the alleged sexual assault of a child, which terminated in plaintiff's favor when

the jury returned a finding of not guilty on one charge and the second charge was dismissed after

the jury was unable to reach a verdict on that charge. (Doc. 3-1, Exh. T). Plaintiff names as

defendants the Cincinnati Police Department and Cincinnati police officers Michelle Longworth,

James Wigginton, and David Knox (collectively, "the City defendants"); Hamilton County

Department of Jobs and Family Services ("Jobs and Family Services"), Lindsay Wallpe, Kay

Fields, the Hamilton County Prosecutor's Office, Joe Deters, and Jennifer Deering (collectively,

"the County defendants"); and Cincinnati Children's Hospital Medical Center ("Children's

Hospital"), Kathi Makoroff, M.D., Rose Lucas, Sharon Dickman, and A. Antoni (collectively,

"the Children's Hospital defendants"). The matter is before the Court on the Children's Hospital

defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to

state a claim for relief (Doc. 7); the County defendants' motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c) (Doc. 11); and the City defendants' motion to dismiss the

complaint pursuant to Rule 12(b)(6) (Doc. 21). Plaintiff has filed a response in opposition to

defendants' Rule 12 motions. (Doc. 46). This matter is also before the Court on plaintiff's motion for leave to amend the complaint.[1] (Doc. 34).

## I. Background

Plaintiff makes the following allegations in the complaint: On August 26, 2010, at 11:42 p.m., a 911 call was placed reporting the commission of a sexual assault. (Doc. 3 at 4; Doc. 3-1, Exh. A[2]). The 911 dispatcher sent two Cincinnati police units to investigate a claim of sexual assualt at 11:48 p.m., and those units arrived at the scene at 11:56 p.m. and 11:57 p.m. (Doc. 3 at 4, 5; Doc. 3-1, Exh. B). Before they arrived at the scene and took witnesses' statements, and without any supporting evidence, the police changed the nature of the allegations and the offense the 911 dispatcher had sent them to investigate from sexual assault/rape to gross sexual imposition[3]. (Doc. 3 at 5, 8; Doc. 3-1, Exhs. C, D). Officer Knox intentionally falsified and fabricated the time and information in the police report he authored. (Doc. 3 at 5; Doc. 3-1, Exh. C).

The alleged victim was taken to Children's Hospital, where emergency room department officials were told a sexual assault had occurred. (Doc. 3 at 5; Doc. 3-1, Exh. E[4]). As a result, a

---

[1] Plaintiff originally filed the motion for leave to amend the complaint and a proposed amended complaint on February 5, 2013 (Doc. 27), but he was ordered to resubmit the motion and the proposed amended complaint with the personal identifiers redacted. (Doc. 31).

[2] When presented with a Rule 12(b)(6) motion to dismiss, the Court may consider the complaint and any exhibits attached thereto, public records, and exhibits attached to the motion to dismiss "so long as they are referred to in the complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

[3] Under Ohio Rev. Code § 2907.05, a person is guilty of gross sexual imposition if he has "sexual contact" with another individual who is less than 13 years of age (§ 2907.05(A)(4)).

[4] According to the report, the victim's grandmother stated that the victim told her that the perpetrator, who the grandmother identified as a worker at the house, digitally penetrated the victim's vagina and rectum. (Doc. 3-1, Exh. E).

2

rape kit examination was performed on the alleged victim. No evidence of transferable DNA was discovered on the alleged victim or on her clothing as a result of rape kit and ultraviolet examinations which were conducted. (Doc. 3 at 5; Doc. 3-1, Exhs. F, G, H, and I). After learning that none of plaintiff's genetic evidence was found during the examination, defendants Longworth, Wigginton, Makoroff, Lucas, Antoni and Dickman conspired to falsify medical documents and "counterfeit" medical opinions to create the false perception that a crime had occurred. (Doc. 3 at 5). These defendants "conspired to condone false [and] misleading misrepresentations of falsified medical documents for the purpose of falsely creating an atmosphere for the existence of probable cause for false arrest and prosecution." (*Id*.). The Children's Hospital defendants also agreed to appear before the trial court and introduce perjured testimony into the record. (Doc. 3 at 5; Doc. 3-1, Exhs. P-1, P-2).

Defendant Antoni, who participated in the medical examination of the alleged victim, was aware that Dr. Johnson at Children's Hospital had issued a medical report stating there was no evidence of sexual abuse. (Doc. 3 at 5). Defendant Antoni maliciously, in bad faith and with deliberate indifference conspired with the other medical defendants to give perjured testimony against plaintiff in court falsely stating there was evidence of possible sexual abuse. (*Id*.).

Defendant Officer Longworth committed perjury by falsely stating in her affidavit submitted in support of a fabricated criminal complaint that a "witness observed the defendant leaving the bedroom that the victim was sleeping in." (*Id*. at 5, citing Doc. 3-1, Exh. J). No witness made a statement to this effect. (*Id*.). Rather, witness Angie Johnson said in her oral

3

victim was sleeping in, and the second witness, Umekia Burton, stated she was asleep at the time the alleged sexual assault took place. (*Id*. at 5-6, citing Doc. 3-1, Exh. K). The false and perjured documents generated by Longworth were a basis for the arrest warrant issued for plaintiff's arrest, although probable cause for the arrest warrant was lacking. (*Id*. at 6). Plaintiff was arrested and held on $500,000 bond. (*Id*.).

Jobs and Family Services employees Wallpe and Fields asserted that they investigated the sexual abuse allegations made against plaintiff and concluded without evidentiary support that plaintiff had sexually abused the alleged victim. (*Id*., citing Doc. 3-1, Exh. M). Defendants Wallpe and Fields conspired with other defendants to violate plaintiff's civil rights, including his right to a fair trial, in violation of 42 U.S.C. § 1985(3) when they concluded without any evidence that plaintiff was guilty of sexual abuse; they produced an investigative report that was the product of fraud and misrepresentations; and the report was presented to the trial court to help the prosecution convict plaintiff of a crime for which there was no proof. (Doc. 3 at 6).

The prosecuting attorney in plaintiff's case, defendant Deering, knew the charges against plaintiff were a "sham" and knowingly used perjured statements and manufactured evidence to unlawfully prosecute plaintiff. (*Id*., citing Doc. 3-1, Exh. N). She perpetuated the conspiracy against plaintiff by moving to seal plaintiff's trial from all internet and public access without his knowledge or consent after being put on notice of the perjured statements and fabricated evidence. (*Id*., citing Doc. 3-1, Exh. O).

Defendant Deters, the policy-maker for the Hamilton County Prosecutor's Office, was deliberately indifferent to the need to train assistant prosecutors about their legal duties and

4

obligations concerning substantive due process and a defendant's right to fair trial protections.

(Doc. 3 at 7). This failure to train caused the constitutional violations alleged in this case. (*Id.*).

Liberally construing the complaint, plaintiff brings claims for malicious prosecution

under Ohio law, and claims under 42 U.S.C. §§ 1983 and 1985 for false arrest and malicious

prosecution in violation of the Fourth Amendment to the United States Constitution and for

conspiracy to use perjured statements and fabricated evidence to violate plaintiff's civil rights.

## II. Plaintiff's claims against all defendants should be dismissed.

### A. Standard of review

Rule 12(b)(6) motions and Rule 12(c) motions are reviewed under the standard applicable

to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See EEOC v. J.H. Routh Packing Co.*, 246

F.3d 850, 851 (6th Cir. 2001) (a district court reviews a Rule 12(c) motion for judgment on the

pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss). When

reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim for relief, the Court must

"construe the complaint in the light most favorable to the plaintiff, accept its allegations as true,

and draw all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss a

complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than

'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to

relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th

Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial

plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

It is well-settled that a document filed pro se is "to be liberally construed," and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989). Courts are not required to devote time to a case when the nature of a pro se plaintiff's claim "defies comprehension." *Roper v. Ford Motor Co.*, No. 1:09cv427, 2010 WL 2670827, at *3 (S.D. Ohio April 6, 2010).

## B. The Children's Hospital defendants' motion to dismiss (Doc. 7) should be granted.

Defendants Children's Hospital, Makoroff, Lucas, Dickman, and Antoni move to dismiss the complaint against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. They contend that they are not mentioned or implicated in plaintiff's claim for malicious prosecution, which is directed at other defendants. (Doc. 7 at 5). They further argue that although the complaint, broadly read, might be construed as alleging claims for violations of plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985, plaintiff has failed to adequately plead a claim against them under these provisions.

To state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed

6

by a person acting under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (citations omitted). To satisfy the "under color of state law prong," plaintiff must show that: (1) defendant was acting under the compulsion of the state (state compulsion test); (2) defendant was engaged in activities traditionally reserved to the state (public function test); or (3) there is a sufficiently close nexus between the state and the challenged conduct of the private party that the private party's actions could fairly be attributed to the state (the symbiotic relationship or nexus test). *Wolotsky v. Huhn*, 960 F.2d 1331, 1335-36 (6th Cir. 1992).

To prove a civil conspiracy under § 1983, the plaintiff must show there was "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To prevail on a civil conspiracy claim, a plaintiff must show that (1) a "single plan existed," (2) the defendants "shared in the general conspiratorial objective" to deprive the plaintiff of his constitutional or federal statutory rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Id.* (citing *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). To establish a civil conspiracy under § 1985(3), the plaintiff must show that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws due to racial or class-based discriminatory animus, (3) an act "in furtherance of the object of such conspiracy" and (4) an injury to the plaintiff resulting from such act. 42 U.S.C. § 1985(3); *see United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983). "[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim."

7

*Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007)

(citing *Gutierrez v. Lynch,* 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

Plaintiff has failed to state a claim against the Children's Hospital defendants for violation of his civil rights under either § 1983 or § 1985.  Plaintiff claims that the individual Children's Hospital defendants: (1) conspired with other defendants to falsify medical documents and fabricate medical opinions to make it appear as though plaintiff had committed a crime, and then agreed to introduce perjured testimony into the record at his criminal trial; and (2) defendant Antoni conspired with the other "medical personnel defendants" to give perjured testimony at plaintiff's trial that there was evidence of possible sexual abuse.[5]  (Doc. 3 at 5).  Plaintiff's allegations against these defendants fail to satisfy the requirements of a § 1983 claim.  First, the facts alleged do not show that the Children's Hospital's employees were acting under color of state law when they medically examined the purported victim of sexual abuse and prepared medical reports based on the results of their examination.  The complaint does not allege that defendants performed their medical activities under state compulsion; defendants' performance of medical examinations and generation of medical reports are not activities traditionally reserved to the state; and there are no allegations showing that the medical functions of Children's Hospital and its employees are entwined with those of the state such that the Children's Hospital defendants could be deemed state actors who acted under color of state law.  Moreover, no Children's Hospital defendant acted under color of state law by testifying at plaintiff's criminal trial.  *See Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983) ("It is beyond

---

[5]Plaintiff does not make any allegations against Children's Hospital itself.

8

question that, when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.'").

In addition, plaintiff has not alleged sufficient facts to show the Children's Hospital defendants deprived him of a federal right. Plaintiff alleges that the Children's Hospital defendants violated his civil rights by conspiring to falsify documents and commit perjury in an effort to secure a criminal conviction against him. (Doc. 3 at 5). Assuming falsification of documents by a private party could constitute the deprivation of an individual's federal rights, plaintiff has not alleged facts to support his claim that the Children's Hospital defendants falsified the reports they generated. The sole factual allegation underlying plaintiff's claims against these defendants is that they completed a rape kit examination on the alleged victim, but "no evidence of anyone's transferrable DNA was discovered on the alleged victim or her clothing." (Doc. 3 at 5, citing Doc. 3-1, Exhs. F, G, H, and I- Children's Hospital examination reports). Plaintiff apparently theorizes that examination results of the alleged victim, which failed to disclose DNA evidence or any "physical findings suggestive of physical abuse" (Doc. 3-1, Exh. F), ruled out the possibility of sexual abuse; accordingly, Dr. Makoroff's report concluding the victim's examination was normal but noting that "[a] normal exam does not exclude sexual abuse" was necessarily false. (*See* Doc. 3-1, Exh. P-2). There is no plausible factual basis for plaintiff's theory challenging these medical opinions as fabrications. Further, to the extent plaintiff claims these defendants offered perjured testimony at trial, they are entitled to absolute immunity. A lay witness is entitled to absolute immunity from civil liability based on his or her trial testimony "no matter how egregious or perjurious" the testimony is alleged to have been. *Maldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (citing *Briscoe*, 460

9

U.S. at 328; *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999)). For these reasons,

plaintiff has failed to state a claim against the Children's Hospital defendants under § 1983.

Nor has plaintiff sufficiently pled a conspiracy claim against these defendants. The

absolute immunity for providing testimony at a trial applies regardless of whether defendants

conspired to deliver false testimony. *Id.* (citing *Spurlock*, 167 F.3d at 1001). Further, plaintiff

has made only conclusory allegations in support of his conspiracy claims against the Children's

Hospital employees, which are insufficient to survive a Rule 12(b)(6) motion. *See Center for*

*Bio-Ethical Reform, Inc.*, 477 F.3d at 832. Finally, plaintiff has not alleged the racial or class-

based animus necessary to support a conspiracy claim under § 1985. *See Estate of Smithers ex*

*rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010) (a plaintiff must allege that the

conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus") (citations omitted); *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.

1999) (same).

For these reasons, plaintiff has failed to state a claim to relief against the Cincinnati

Children's Hospital defendants under § 1983 or § 1985. The motion to dismiss by these

defendants (Doc. 7) should be granted.[6]

**C. The County defendants' motion for judgment on the pleadings (Doc. 11) should be granted.**

The Hamilton County defendants (Jobs and Family Services and case workers Wallpe and

Fields, Hamilton County Prosecutor Deters, and Assistant Hamilton County Prosecutor Deering)

---

[6]For the reasons explained in § II(E) of the Report and Recommendation, any state law claims plaintiff brings against the Children's Hospital defendants should be dismissed without prejudice.

move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[7] Defendants allege that plaintiff's § 1983 claims against them must be dismissed because there are no factual allegations to support a finding they violated plaintiff's civil rights. Defendants assert that the attachments to the complaint demonstrate that a violation of plaintiff's civil rights did not occur because no one gave perjured testimony and thus there was no conspiracy to present perjured testimony. Defendants further allege that plaintiff has not pled a conspiracy claim with the requisite degree of specificity. Finally, the individual County defendants contend they are entitled to absolute immunity. The Court will address plaintiff claims brought under federal law against each County defendant in turn.[8]

### 1. Defendant Deters

Plaintiff's complaint does not allege that defendant Deters was directly involved in his criminal case, but instead the complaint against Deters is premised on a "failure-to-train" theory. (Doc. 3 at 7). Plaintiff alleges that defendant Deters, as the policymaker for the Hamilton County Prosecutor's Office, was deliberately indifferent to the need to train assistant prosecuting attorneys about "their legal duties and obligations with respect to how substantive due process and a defendant's right to a fair trial protections are defined and their limits within the frame-work of what is constitutionally permissible," and that the lack of training caused the resulting constitutional violations. (*Id.*).

Plaintiff's allegations are insufficient to state a claim to relief against defendant Deters. "Persons sued in their individual capacities under § 1983 can be held liable based only on their

---

[7]Although plaintiff named the Hamilton County Prosecutor's Office as a defendant in the complaint, he does not make any allegations against this entity.

[8]For the reasons explained in § II(E) of the Report and Recommendation, any state law claims plaintiff brings against the County defendants should be dismissed without prejudice.

own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"); *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants"). The complaint alleges no personal wrongdoing by defendant Deters.

In addition, defendant Deters is entitled to absolute prosecutorial immunity in this lawsuit insofar as the complaint alleges that Deters inadequately trained and supervised assistant prosecutors in the Hamilton County Prosecutor's Office. Prosecutors are entitled to absolute immunity from liability in § 1983 actions based on prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 428, 430 (1976). These prosecutorial actions include preparations for initiating a judicial proceeding. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (citing *Burns v. Reed*, 500 U.S. 478, 492 (1991)). This immunity extends to legal supervision or training that is directly connected with the conduct of a trial. *Id.* at 344.

Finally, insofar as plaintiff seeks to sue Deters in his official capacity, the suit must be treated as a suit against the state, which is not cognizable under § 1983. *Pusey v. City of Youngstown*, 11 F.3d 652, 657-58 (6th Cir. 1993) (citing *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Accordingly, the complaint against defendant Deters should be dismissed for failure to state a claim to relief under § 1983.

12

## 2. Defendant Deering

Plaintiff alleges that Deering violated his rights by (1) knowingly using perjured statements and fabricated evidence to unlawfully prosecute plaintiff on charges that she knew to be a "sham," and (2) after being put on notice of the perjured statements and fabricated evidence, moving to seal plaintiff's trial information from public disclosure and internet access without the plaintiff's knowledge or consent. (Doc. 3 at 6, citing Exhs. N, O). Defendant Deering alleges that she is entitled to absolute prosecutorial immunity on plaintiff's claims against her.

"[P]rosecutors have absolute immunity from suits for malicious prosecution . . . and . . . this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial." *Koubriti v. Convertino,* 593 F.3d 459, 467 (6th Cir. 2010) (citing *Burns*, 500 U.S. at 484). Prosecutors also have absolute immunity for evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, and for preparation of witnesses for trial. *Id.* (citing *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003)). Thus, Deering is entitled to absolute immunity from liability on any claim plaintiff brings premised on the use of allegedly perjured and fabricated evidence in the criminal proceedings against him and any claim for malicious prosecution. Deering is also immune from liability on plaintiff's claim that a violation of his rights occurred when Deering moved for, and the trial judge entered, an order sealing from public access documents in his case, which involved the alleged sexual assault of a child. Defendant Deering is entitled to absolute immunity from liability on plaintiff's claims brought against her under federal law.

## 3. Defendants Wallpe and Fields

Plaintiff's only allegations against Wallpe and Fields, case workers with Jobs and Family

13

Services, are: (1) they asserted in a report that they had investigated the sexual abuse allegations made against plaintiff and they concluded without any evidence to support their findings that plaintiff had sexually abused the alleged victim (Doc. 3 at 6, citing Doc. 3-1, Exh. M); and (2) they actively conspired "with other named defendants to violate the plaintiff's civil rights in violation of 42 U.S.C. § 1985(3) when they concluded without any evidence that the plaintiff was guilty of sexual abuse." (Doc. 3 at 6). Defendants Wallpe and Fields contend they are entitled to absolute immunity on plaintiff's claims against them because their challenged actions were performed in a prosecutorial capacity.

The Court need not address whether defendants Wallpe and Fields are entitled to absolute immunity in the context of this case because it is clear that plaintiff has failed to allege sufficient facts to state a claim to relief against these defendants. *See Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise the right to relief above the speculative level. . . ."). The report plaintiff references in connection with his claims against Wallpe and Fields is a screening report dated August 27, 2010, the date after the alleged sexual assault occurred. (*See* Doc. 3-1, Exh. M). The report states that the sexual abuse allegation against plaintiff was "Substantiated." (*Id.*). Plaintiff's conclusory allegation that Wallpe and Fields made this assertion in the report "without any evidence to support their findings" fails to include enough facts to state a plausible claim to relief for a violation of plaintiff's constitutional rights under § 1983. Further, plaintiff alleges no facts to support his claim that Wallpe and Fields conspired with other defendants to deprive him of his civil rights based on a racial or class-based animus. *See Bass,* 167 F.3d at 1050. For these reasons, plaintiff's claims against defendants Wallpe and Fields should be dismissed for failure to state a claim to relief.

14

#### 4. Defendant Jobs and Family Services

To succeed on a claim of county liability, a plaintiff must establish that his constitutional rights were violated and that a policy or custom of the county was the moving force behind the deprivation of the plaintiff's rights. *Miller v. Sanilac Cnty*, 606 F.3d 240, 254-55 (6th Cir. 2010). In this case, plaintiff has produced no evidence indicating that Jobs and Family Services employees Wallpe and Fields acted pursuant to a policy or custom of Hamilton County in allegedly violating plaintiff's rights. Rather, plaintiff's sole allegation against defendant Jobs and Family Services is that the department's investigative report prepared by Wallpe and Fields was used in his allegedly malicious prosecution. (Doc. 3 at 6). Thus, plaintiff's § 1983 claim against the county is, in reality, based on a theory of *respondeat superior*, which does not apply to plaintiff's § 1983 claims and may not serve as a basis for liability against the county. *See Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 693-94 (1978). Moreover, a county cannot be held liable under § 1983 where the plaintiff fails to show a constitutional violation by its employees in the first instance. *Kinkus v. Village of Yorkville, Ohio*, 289 F. App'x 86, 93 (6th Cir. 2008) (citing *Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996)). Because there are no allegations to support a claim against the individual county employees for violation of plaintiff's constitutional rights, no claim lies against the county. Plaintiff's claims against Jobs and Family Services should be dismissed.

15

**D. The City defendants' motion to dismiss (Doc. 21) should be granted.**

Plaintiff alleges that the City defendants violated his civil rights by: (1) charging plaintiff with gross sexual imposition without supporting evidence after being dispatched to investigate a rape charge; (2) fabricating the timeline of events in the police report (Doc. 3-1, Exh. C); (3) conspiring with the Children's Hospital defendants to falsify medical documents and fabricate medical opinions to create the false perception that a crime had occurred; and (4) submitting a criminal complaint supported by a false affidavit which stated that a witness observed plaintiff leaving the bedroom where the victim was sleeping, which led to issuance of an arrest warrant that was not supported by probable cause.

The Cincinnati Police Department moves to dismiss the complaint against it on the ground it lacks the legal capacity to be sued. Defendants City of Cincinnati Police Officers Longworth, Wigginton and Knox move to dismiss plaintiff's claims for malicious prosecution and false arrest brought under § 1983 and his claims for conspiracy brought under § 1985 on grounds of qualified immunity. In addition, defendants contend that plaintiff's claims against them are barred by the applicable two-year statute of limitations.

**1. The Cincinnati Police Department**

The City of Cincinnati Police Department contends that it is not an entity capable of being sued. This is an accurate statement of the law. Under Ohio law, "[a] police department is not a juridical entity subject to suit." *Schaffner v. Pell*, No. 2:10-cv-374, 2010 WL 2572777, at *2 (S.D. Ohio June 21, 2010) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) (citations omitted)). Plaintiff's §§ 1983 and 1985 claims against the City of Cincinnati Police Department should therefore be dismissed.

16

## 2. The defendant police officers

### a. Plaintiff's false arrest claim against the officers should be dismissed as time-barred.

A two-year statute of limitations applies to § 1983 claims that arise in Ohio. *Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc). A two-year statute of limitations likewise applies to § 1985 claims brought in Ohio. *Dotson v. Lane*, 360 F. App'x 617, 620 n.2 (6th Cir. 2010). Plaintiff instituted this action on September 13, 2012, by filing a motion for leave to proceed *in forma pauperis* with the complaint attached.[9] (Doc. 1). Plaintiff's claims therefore must have accrued within two years of that date, or else they are barred by the applicable statute of limitations.

Defendants argue that plaintiff's claims accrued no later than August 28, 2010, the date the criminal complaint was filed against him. (Doc. 3-1, Exh. J). Defendants allege that the complaint should have put plaintiff on notice of the alleged unlawful actions that form the basis for his claims against the City defendants, *i.e.*, the alleged inclusion of false statements in the police report, the alleged conspiracy to falsify medical documents, and the inclusion of perjured statements in an affidavit attached to the criminal complaint. (Doc. 21 at 10, citing Doc. 1 at 5).

The date plaintiff had notice of these matters is immaterial. "[A] claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (internal citations omitted) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); *see also Wheeler v. Kirkland*, No. 07-cv-336, 2008 WL 440287, at *6 (E.D. Ky. Feb. 13, 2008) (explaining further that the arrest in *Kato* was

---

[9] Defendants allege that plaintiff filed this action on September 20, 2012 (Doc. 21 at 10), but that is actually the date plaintiff was granted leave to proceed *in forma pauperis* and to file the complaint. (Doc. 3).

17

warrantless, but where the "arrest was pursuant to a duly obtained arrest warrant," the statute of

limitations begins to run upon arrest). Plaintiff's false arrest claim accrued at the latest on

September 4, 2010, the date of plaintiff's initial appearance and bond hearing, when his

"detention without legal process" ended. *See State of Ohio v. Anthony Lance Johnson*, No.

B1005946 (Hamilton County, Ohio Ct. of Com. Pleas), docket entry dated 9/4/10.[10]  Plaintiff

failed to institute this lawsuit within two years of that date.  The false arrest claim brought

against the defendant police officers under §§ 1983 and 1985 should therefore be dismissed as

time-barred.

A § 1983 claim for malicious prosecution does not accrue until the criminal proceeding is

terminated in favor of the criminal defendant. *Fox*, 489 F.3d at 235 (citing *Heck v. Humphrey*,

512 U.S. 477, 486-90 (1994)).  The criminal proceedings against plaintiff were terminated in his

favor on June 7, 2011.  (Doc. 3-1, Exh. T).  Plaintiff filed his complaint in this action within two

years of that date.  Accordingly, the defendant police officers have not shown that plaintiff's

malicious prosecution claims against them are time-barred.   Plaintiff's malicious prosecution

claims brought against these defendants under §§ 1983 and 1985 should not be dismissed on

statute of limitations grounds.

---

[10]"Federal courts may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)). *See also National Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 839 n.2 (6th Cir. 2010); *Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999).

### b. The police officers should be granted qualified immunity

### i. Law of qualified immunity

Even if plaintiff's false arrest claim were not barred by the statute of limitations, the

defendant police officers would be entitled to qualified immunity on that claim in addition to the

malicious prosecution claim. Qualified immunity protects government officials "from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,*

457 U.S. 800, 818 (1982). Once a defendant raises a qualified immunity defense, the plaintiff

must satisfy a two-pronged analysis: (1) taken in the light most favorable to the party asserting

the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and

(2) if a violation could be made out on a favorable view of the parties' submission, was the right

clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001),

overruled on other grounds by *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). In its discretion,

the court may initially address either of these questions in light of the circumstances of the

particular case. *Pearson,* 555 U.S. at 236.

The constitutional rights at issue here with respect to plaintiff's claims against the City

defendants are plaintiff's Fourth Amendment rights to be free from false arrest and malicious

prosecution. The law governing these claims was clearly established as of the date of the events

giving rise to plaintiff's claims. The Fourth Amendment requires that arrest warrants be issued

only upon a showing of probable cause. *Vakilian v. Shaw,* 335 F.3d 509, 517 (6th Cir. 2003)

(citing *Greene v. Reeves,* 80 F.3d 1101, 1105 (6th Cir. 1996)). *See also Radvansky v. City of*

*Olmsted Falls,* 496 F.3d 609, 614 (6th Cir. 2007) ("the Fourth Amendment requires that 'a law

enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.'") (citing *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause exists if "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *Id.* at 615 (citing *Beck*, 379 U.S. at 91). An investigating officer may be held liable under § 1983 for making material false statements, either knowingly or in reckless disregard for the truth, in an effort to establish probable cause for the plaintiff's arrest. *Vakilian,* 335 F.3d at 517 (citing *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)).

The burden is on a plaintiff bringing a constitutional claim for false arrest under the Fourth Amendment to show probable cause for the arrest was lacking. *Provience v. City of Detroit, et al.,* __ F. App'x __, No. 12-1576, 2013 WL 3357994, at *6 (6th Cir. July 5, 2013) (citing *Parsons v. City of Pontiac,* 533 F.3d 492, 500-01 (6th Cir. 2008)). To overcome an officer's entitlement to qualified immunity for false arrest under § 1983, a plaintiff must establish: (1) that the defendant "stated a deliberate falsehood or showed reckless disregard for the truth," and (2) "that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian,* 335 F.3d at 517 (citations omitted). Stated otherwise, the plaintiff must show that the warrant would not have been issued without the allegedly false material information. *Id.* In determining if plaintiff has made this showing, normal principles of causation apply. *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010) (citing *Malley v. Briggs,* 475 U.S. at 335, 337 (1986)).

To establish a malicious prosecution claim under § 1983, plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceeding; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes*, 625 F.3d at 308-309. Probable cause in this context has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)). Probable cause is established if there is an objectively reasonable basis for the belief that a crime has been committed. *Id*. at 563. "[T]he establishment of probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id*. at 392 (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)) (internal quotation marks omitted).

**ii. The facts alleged do not show a violation of plaintiff's clearly-established federal rights under §§ 1983 and 1985.**

Plaintiff claims that Officer Knox violated his civil rights by falsifying the timeline of events in the police report and fabricating a gross sexual imposition charge after a rape had been reported. (Doc. 3-1, Exh. C). Officer Knox contends he is entitled to qualified immunity on plaintiff's claims against him because there was probable cause for plaintiff's arrest. Officer Knox also argues that plaintiff has misconstrued the exhibits attached to the complaint in this action showing the timeline of events, and Officer Knox contends there are no factual allegations that show he fabricated a gross sexual imposition charge after a rape was reported.

Plaintiff has failed to allege facts which establish that Officer Knox is not entitled to

21

qualified immunity because he (1) allegedly changed the charge against plaintiff from rape to gross sexual imposition without supporting evidence, or (2) intentionally misreported the timeline of the events that occurred the night of the alleged assault. The facts as alleged in the complaint and supporting documentation show there was probable cause for plaintiff's arrest and the gross sexual imposition charge. The 911 caller reported that the victim had been sexually assaulted by a perpetrator who touched her under the clothing on her vagina and buttocks. (Doc. 3-1, Exh. A). These allegations were supported by the victim's statement, the witnesses' statements, and the report prepared by Jobs and Family Services. (Doc. 3-1, Exhs. C, J, K, M). The investigation therefore disclosed facts which provided probable cause for a charge of gross sexual imposition. *See* Ohio Rev. Code § 2307.05.

Further, plaintiff's allegation that Officer Knox intentionally misrepresented the timeline of events, as more fully explained in plaintiff's opposing memorandum, is contradicted by the documentation plaintiff has submitted. Plaintiff alleges that Officer Knox falsified the timeline by indicating in his report that the incident occurred at 11:40 p.m. and that the report of the incident was taken at 11:48 p.m., when in fact the 911 call was made at 11:42 p.m. and Officer Knox did not arrive on the scene until 11:56 p.m. (Doc. 3-1, Exhs. B, C; Doc. 46 at 6). However, the dispatch records and Officer Knox's report, which are attached as exhibits to the complaint, indicate that the 911 call reporting a sexual assault came in at 11:42 p.m.; police were dispatched to the scene at 11:48 p.m.; and Officer Knox recorded the time the incident was reported as 11:48 p.m. (Doc. 3-1, Exhs. B, C). Thus, there is no indication Officer Knox falsely reported the timeline of events. Because the allegations of the complaint do not establish the violation of plaintiff's constitutional rights by Officer Knox, defendant Knox should be granted qualified

22

immunity.

Defendant Longworth contends that she is entitled to qualified immunity on plaintiff's claims against her, which are premised on allegations she filed a false affidavit in support of the criminal complaint by stating that "a witness observed the defendant [plaintiff] leaving the bedroom that the victim was sleeping in when he did not have any purpose to be in there." (*See* Doc. 3-1, Exh. J). Officer Longworth argues that accepting as true plaintiff's allegation that this statement is false, the statement is not sufficient to negate probable cause for plaintiff's arrest. The Court agrees.

The record shows that Officer Longworth functioned as the "complaining witness" by submitting the August 28, 2010 criminal complaint against plaintiff. (Doc. 3-1, Exh. J). Officer Longworth is entitled to qualified immunity for actions taken in this capacity insofar as the facts alleged demonstrate there was probable cause for plaintiff's arrest on the charge of gross sexual imposition, notwithstanding any false statements made by Officer Longworth in her affidavit. *See Malley*, 475 U.S. at 340-41. In addition to Officer Longworth's affidavit, the evidence offered in support of the criminal complaint included the victim's statement and the witnesses' statements. (Doc. 3-1, Exh. J). The victim reported that plaintiff had "rubbed her on her vagina and anus under her underwear." (Doc. 3-1, Exh. C). A witness informed Officer Wigginton during a taped interview that she observed plaintiff in the bedroom where the victim was lying on the floor around the time of the alleged assault. (Doc. 3-1, Exh. K, pp. 11-12). Thus, accepting as true plaintiff's allegation that no witness made an oral or written statement reporting that plaintiff was seen "leaving" the bedroom where the alleged assault occurred, the statements of the nine-year old child victim along with the witness statement that plaintiff was observed in the bedroom where

23

the child victim was lying on the floor are sufficient to establish probable cause for issuance of the

criminal complaint charging plaintiff with gross sexual imposition. *See Ahlers v. Schebil*, 188

F.3d 365, 370 (6th Cir. 1999) (sex abuse victim's eyewitness statements "are generally entitled to

a presumption of reliability and veracity," and law enforcement officers are "entitled to rely on an

eyewitness identification to establish adequate probable cause with which to sustain an arrest.")

Thus, Officer Longworth is entitled to qualified immunity on plaintiff's claim for false arrest. *See*

*Malley*, 475 U.S. at 344-45 ("Only where the warrant application is so lacking in indicia of

probable cause as to render official belief in its existence unreasonable . . . will the shield of

immunity be lost."); *Pierson v. Ray*, 386 U.S. 547, 557 (1967) (defenses of good faith and

probable cause are available in false arrest action under § 1983).

  Finally, plaintiff has failed to plead his conspiracy claims against the remaining City

defendants "with some degree of specificity," and instead he has made only "vague and

conclusory allegations unsupported by material facts. . . ." *See Center for Bio-Ethical Reform,*

*Inc.*, 477 F.3d at 832. Plaintiff alleges that Officer Wigginton conspired to falsify medical

documents and fabricate medical opinions in an effort to create the perception a crime had

occurred. However, there are no factual allegations to support plaintiff's conspiracy claim against

defendant Wigginton. Nor does the complaint include conspiracy allegations against any other

City defendant or allegations that any City defendant acted with a class-based or racial animus.

Accordingly, the City defendants should be granted qualified immunity on plaintiff's conspiracy

claims.

  For these reasons, plaintiff's §§ 1983 and 1985 claims against the individual City

defendants should be dismissed.[11]

**E. The Court should decline to exercise supplemental jurisdiction.**

It appears from the allegations of the complaint that plaintiff brings state law claims for malicious prosecution against certain defendants. It is not clear whether plaintiff is asserting additional state law claims. Insofar as plaintiff is alleging claims under Ohio law, the Court should decline to exercise supplemental jurisdiction over those claims. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 210 (6th Cir. 2004) (although the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is a matter of discretion, when a court dismisses all federal claims before trial, it generally should dismiss the state law claims as well).

**III. Plaintiff's motion for leave to amend the complaint (Doc. 34).**

**A. Rule 15 standard**

The Federal Rules provide that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). "A district court has discretion in determining whether justice requires that [an] amendment be allowed." *Greenberg v. Life Ins. Co. of Virginia,* 177 F.3d 507, 522 (6th Cir. 1999) (citing *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986)). Factors relevant to the Court's decision include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Coe v. Bell,* 161 F.3d 320, 341-42 (6th Cir. 1998) (citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994)). Delay alone is an insufficient basis upon which to deny a motion to amend. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

---

[11]For the reasons explained in § II(E) of the Report and Recommendation, any state law claims plaintiff brings against the City defendants should be dismissed without prejudice.

**B. The proposed amended complaint**

Plaintiff filed his motion for leave to amend the complaint on February 15, 2013, to add new defendants and to cure any deficiencies in his statement of the claims against each defendant. (Doc. 34). In the proposed amended complaint, plaintiff names five new defendants: (1) the Hamilton County Court of Common Pleas, (2) Hamilton County Court of Common Pleas Judge Steven E. Martin, (3) Hamilton County Judge Melba Marsh, (4) the Hamilton County Public Defender Commission, and (5) his court-appointed attorney, Hamilton County Public Defender Bryan R. Perkins. Plaintiff alleges that the judges in the state court case, Judges Marsh and Martin, and the attorneys participated in a conspiracy to defraud the court, pursuant to which bogus documents were placed into the record, lies were told under oath, and schemes were concocted to cover up certain falsehoods. (Doc. 34-1 at 12). Plaintiff alleges that defendant Deering concealed the medical report prepared by Children's Hospital physician Dr. Johnson showing plaintiff's actual innocence, tampered with evidence, and attempted to obtain an indictment from the grand jury through fraud in violation of Ohio statutory provisions and plaintiff's constitutional rights. (*Id.* at 13). Plaintiff alleges the Common Pleas Court fraudulently obtained jurisdiction over him without probable cause based on documents and false information provided through Officer Longworth, thereby subjecting him to false arrest and false imprisonment in violation of his constitutional rights. (*Id.*). Plaintiff further alleges that Judge Marsh, acting in the absence of all jurisdiction, tampered with evidence in violation of Ohio statutory law and the Judicial Code of Conduct by issuing a court order prohibiting plaintiff's court-appointed counsel from copying, sharing or disclosing witness statements, medical documents or other evidence with plaintiff, thereby violating plaintiff's constitutional rights. (*Id.*

26

at 14, 18, citing Exh. R). Plaintiff contends that as a result of Judge Marsh's standing order prohibiting his court-appointed counsel from disclosing or sharing medical documents and witness statements with plaintiff to prepare his defense before trial, plaintiff was forced to surrender his right to trial counsel and represent himself before and through his trial. (Doc. 34-1 at 16). Plaintiff alleges that trial Judge Martin, functioning in the absence of all jurisdiction and with a purpose to defraud the court, conspired with Deering and Perkins to unlawfully waive plaintiff's right to a public trial without plaintiff's knowledge or consent by forging a writing and court order in violation of Ohio statutory law, thereby violating plaintiff's constitutional rights. (*Id.* at 14-15, 19, citing Exh. S). Plaintiff alleges that by waiving his right to a public trial, Perkins violated plaintiff's rights under the due process and confrontation clauses, and his right to the effective assistance of counsel. (*Id.* at 15).

Plaintiff also adds factual allegations against the original defendants. Plaintiff alleges that the police report prepared by Officer Knox was forged in violation of Ohio law because it contained false information concerning the timeline of events. (*Id.* at 10, citing Exhs. I-1 and I-2). Plaintiff contends the 911 call was placed to the Cincinnati Police Dispatch at 11:42 p.m.; defendant Knox noted in the police incident report that the incident occurred "from 11:40 p.m."; and the report was taken at 11:48 p.m. (*Id.* at 10, citing Exh. F). Plaintiff questions the reported times because the dispatch records show that defendant Knox did not arrive on the scene until 11:56 p.m.

Plaintiff makes additional allegations regarding the purported lack of probable cause. Plaintiff asserts that the alleged victim's body and clothing were analyzed for the presence of plaintiff's DNA; swabs taken during the rape kit exam did not reveal plaintiff's skin cells on the

27

alleged victim, which allegedly rules out the possibility of "skin-on-skin contact"; and "touch DNA" contradicted the alleged victim's account. (*Id*. at 9). Plaintiff alleges that a medical report based on the findings of Dr. Johnson at Children's Hospital concluded: "Exam reveals NO physical findings suggestive of sexual abuse." (*Id*. at 7; Exh. E) (emphasis in original). Plaintiff asserts that Dr. Makoroff's statement in her medical report that "[a] normal exam does not exclude sexual abuse" conflicts with Dr. Johnson's findings and is deliberately misleading because a "rape kit exam is highly invasive and highly detailed. . . ." (*Id*. at 7, 8-9; Exhs. C, D, E, F-1, F-2). Plaintiff contends that Dr. Johnson's report eliminates any possibility that the alleged victim was sexually abused, it shows the initial allegations of rape and sodomy were untrue, and the preliminary investigation by the Cincinnati police should have ended at this point because they had no proof a crime had been committed. (*Id*. at 8).

Plaintiff further alleges that the Hamilton County Prosecutor's Office conspired with the Children's Hospital defendants and Judge Martin to tamper with records in violation of Ohio statutory law and to appear before the Court for the purpose of testifying as to falsified medical records knowing they had been tampered with or forged in violation of Ohio law. (*Id*. at 15-16). Plaintiff alleges that as a direct result of the false charges, his unlawful arrest, and the nine months' imprisonment he underwent throughout the course of his trial, he suffered lost wages and loss of his possessions and became homeless, which caused him to undergo short-term psychiatric hospitalization. (*Id*. at 16).

### C. Defendants' opposition to the proposed amended complaint.

The County defendants oppose plaintiff's motion for leave to file an amended complaint.

(Docs. 30, 36[12]). They allege that the proposed amendment of plaintiff's §§ 1983 and 1985 claims would be futile for the same reasons set forth in their motion for judgment on the pleadings. (Doc. 11). The County defendants challenge as factually baseless plaintiff's allegations that defendants Deering and Deters knowingly sought an indictment based on testimony that was necessarily perjured because the results of the victim's rape examination were "normal" and DNA testing purportedly ruled out "touching." (Doc. 34 at 8, 9). Defendants note that the medical examination results specifically stated that a normal exam does not exclude sexual abuse, and they cite three Ohio cases as authority for the proposition that normal rape examination results do not rule out unlawful sexual contact. (Doc. 36 at 4-5, citing *State v. Gatlin*, 2011-CA-00235, 2012 WL 2903963 (Ohio App. 5 Dist. July 16, 2012); *State v. Sims*, 10AP-1063, 2012 WL 1894276 (Ohio App. 10 Dist. May 24, 2012); *State v. Blackburn*, No. 22679, 2009 WL 498086 (2d Dist. Feb. 27, 2009)).

The Children's Hospital defendants also oppose plaintiff's motion for leave to file an amended complaint. (Doc. 33). They contend the proposed amended complaint is dilatory and would be futile for the reasons stated in their motion to dismiss. They argue that a claim for falsification under state law cannot be brought in a civil action absent a criminal conviction (Doc. 33 at 4-5); any claim brought under § 1983 or § 1985 must be dismissed because plaintiff cannot establish that he was deprived of a right secured by the Constitution or laws of the United States or that any alleged deprivation was committed under color of state law; and plaintiff has not alleged the elements of a § 1985(3) claim. Finally, the Children's Hospital defendants note that plaintiff's response to their motion to dismiss was initially due on November 14, 2012, and they

---

[12] The County defendants resubmitted their memorandum in opposition to the motion for leave to amend the complaint after plaintiff filed the redacted motion for leave to amend (Doc. 34).

argue that allowing plaintiff to amend the complaint would unnecessarily delay these proceedings to their prejudice as the proposed amended complaint does not seek to add any new substantive allegations. (*Id.* at 6).

The City defendants also oppose plaintiff's motion for leave to amend. (Doc. 37). They contend plaintiff has engaged in delaying tactics and that the proposed amendment would be futile because the allegations of the amended complaint do not negate probable cause for plaintiff's arrest and prosecution.

In his reply memorandum in support of his motion for leave to amend, plaintiff asserts that the amended complaint clearly identifies each defendant and explains how defendants violated state law and plaintiff's constitutional rights under color of state law. (Doc. 38). Plaintiff contends the amended complaint adds a number of allegations against the Children's Hospital defendants that were not part of the original complaint, including fraud on the court under 42 U.S.C. § 1983 through fabrication of evidence; proof of forgery of medical documents and tampering with records as evidenced by the absence of skin cells on the alleged victim's body and clothing, which plaintiff asserts is proof he had no "skin-on-skin contact" with the alleged victim; lack of probable cause; and lack of subject matter jurisdiction, jurisdiction over plaintiff, and jurisdiction over the offenses charged.

### D. Leave to amend the complaint should be denied.

Plaintiff should be denied leave to file the proposed amended complaint. It is clear from a comparison of the allegations of the original and proposed amended complaints that the proposed amendment to the complaint would be futile.

First, the proposed amended complaint fails to state a claim for relief against the

individual defendants plaintiff seeks to add to the lawsuit. Judges are afforded absolute immunity from suit for § 1983 liability for acts they commit while functioning within their judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Pierson,* 386 U.S. 547. Judges retain absolute immunity from liability even if they act maliciously or corruptly, so long as they are performing judicial acts and are not acting in the complete absence of all jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). *See also Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001). It is clear that plaintiff has not alleged facts indicating that Judges Martin and Marsh acted outside their judicial capacity and in the complete absence of all jurisdiction. The judges are therefore absolutely immune from civil liability in this matter. In addition, plaintiff has not made any factual allegations to support a claim that defendant Perkins, his attorney in the state court proceeding, conspired with other parties to defraud the trial court. (Doc. 34 at 12). Moreover, "a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981); *see also Dunning v. Yuetter*, 12 F. App'x 282, 284 (6th Cir. 2001) (holding that criminal defense attorneys do not act under color of state law for purposes of § 1983). Therefore, it would be futile to allow plaintiff to amend the complaint to add the newly-named individual defendants to this lawsuit.

The proposed amended complaint likewise fails to state a claim to relief against the entities plaintiff seeks to add as defendants to this lawsuit. Plaintiff cannot sue the Hamilton County Court of Common Pleas because a court of common pleas can neither sue nor be sued. *Malone v. Court of Common Pleas of Cuyahoga County*, 344 N.E.2d 126, 128 (Ohio 1976). Further, there is no basis for holding the Hamilton County Public Defender Commission liable in

31

this matter.  The Commission is not amenable to liability under a *respondeat superior* theory, and

plaintiff has not alleged facts to show the County had a custom or policy that was the moving

force behind the deprivation of his rights so as to subject the Commission to liability for any

constitutional torts of its employees. *See Powers v. Hamilton County Public Defender*

*Commission*, 501 F.3d 592, 607 (6th Cir. 2007).

Finally, the additional allegations presented in the amended complaint do not support a

finding that any defendant named in the original complaint violated plaintiff's constitutional

rights.  For the reasons discussed in connection with defendants' Rule 12 motions, plaintiff has

failed to state plausible claims for violations of his civil rights based on falsification of the police

records, presentation of a false affidavit, fabrication of medical evidence, presentation of perjured

testimony, tampering with evidence, or conspiracy to interfere with his constitutional rights.

Plaintiff should therefore be denied leave to file the proposed amended complaint on the ground

the amendment would be futile.

## IT IS THEREFORE ORDERED THAT:

(1)     Plaintiff's motion for extension of time to respond to the dispositive motions (Doc. 42) is

**DENIED** as moot.

## IT IS THEREFORE RECOMMENDED THAT:

(1)     Plaintiff's motion for leave to amend the complaint (Doc. 34) be **DENIED**.

(2)     The Children's Hospital defendants' motion to dismiss (Doc. 7), the County defendants'

motion for judgment on the pleadings (Doc. 11), and the City defendants' motion to

dismiss (Doc. 21) be **GRANTED**.  Plaintiff's claims brought under 42 U.S.C. §§ 1983 and

1985 should be **DISMISSED** with prejudice.

(3)     The Court decline to exercise supplemental jurisdiction over any state law claims brought

by plaintiff and those claims be **DISMISSED** without prejudice.

(4)     The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal

of any Order adopting this Report and Recommendation would not be taken in good faith

and therefore deny plaintiff leave to appeal *in forma pauperis*.  Plaintiff remains free to

apply to proceed *in forma pauperis* in the Court of Appeals.  *See Callihan v. Schneider*, 178

F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105

F.3d 274, 277 (6th Cir. 1997).


Date: 7/17/13

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ZOSER-RA NETERKEHT,            Case No. 1:12-cv-695
      Plaintiff,                  Dlott, J.
                                 Litkovitz, M.J.

     vs.

MICHELLE LONGWORTH, et al.,
      Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Zoser-Ra Neter Keht
117 E. 12th Street
Cinti, OH 45202

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
   *(Transfer from service label)*   7011 3500 0001 5345 9183

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540